## THE GENERAL G. MOTT.

### THE LAURA B.

### THE LENA.

### THE HOWARD SMITH.

### DEMARIS v. THE GENERAL G. MOTT et al.

*(Circuit Court of Appeals, Third Circuit. May 24, 1892.)*

COLLISION—RIVER NAVIGATION—PROPER SIDE OF CHANNEL.

Two steam tugs, the L. and the M., each with a tow, approached each other nearly head on, by night, in the Delaware river, and each discovered the approach of the other when about a mile apart. Signals of one whistle were exchanged when the vessels were about one-half a mile apart, and both ported their helms. The court found, on conflicting evidence, that the M. was on the proper side of the channel, and could not have gone further inshore, owing to the presence of anchored vessels; that the L. either had gone too far towards the wrong shore before porting her helm, or that she did not port it sufficiently,—and hence *held* that for the collision between the two tows the L. was solely in fault.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

In Admiralty. Libel by Charles Demaris, master of the tug Laura B., and bailee of the barge Lena and her cargo, against the tug General G.

Mott and the schooner Howard Smith, for collision. **Decree below dismissing the libel.** Affirmed.

*Edward F. Pugh* and *Henry Flanders*, for appellant.

*John F. Lewis*, for the General G. Mott.

*Alfred Driver*, for the Howard Smith.

Before ACHESON, Circuit Judge, and WALES and GREEN, District Judges.

WALES, District Judge. At about 2 o'clock on the morning of July 27, 1889, the tug Laura B. with the barge Lena, lashed to her port side, and the barge May, lashed to her starboard side, both barges being heavily loaded, was going down the Delaware river, and when abreast of the Greenwich piers, on the western side of the river, the lights of a tug with a tow astern were seen nearly ahead, at the distance of about a mile, which lights proved to be upon the tug General G. Mott, having in tow the schooner Howard Smith astern by a hawser. The night was cloudy, with occasional rain, but lights were easily seen. The tide was high water slack, turning to ebb. The channel at this point is from 300 to 500 yards wide. The tugs discovered each other at the same time, each having the other on its port bow; the Laura B. running nearly south by west, and converging on the Mott's course, which was northeast by north. The Mott was nearly opposite the Gloucester ferry, and on the starboard or eastern side of the channel. A little astern, and on the port quarter of the Laura B., the ferryboat Peerless was coming down the river; and a short distance ahead of, and on the starboard bow of, the Mott, the ferryboat Law was going up the river. On the eastern side of the channel, a little above the ferry, were the regulation anchorage grounds, where two steamers were lying at anchor, and beginning to swing around with the tide. The specific allegations of the libel are that the Laura B. was heading directly down the river, and that the Mott, with her tow, was heading up the river, a little to the eastward; that when the tugs were about a half a mile apart the red light alone of the Mott was visible from the Laura B., about two or three points off the port bow of the latter; that at this time the Mott blew one whistle to indicate that she intended to go to the eastward, and that the Laura B. replied, with a like signal, that she would direct her course to the westward, at the same time porting her wheel; that both vessels kept on, and that the Laura B. had changed her course about two points to the westward, when the Mott blew two whistles, indicating that she was going to the westward, and immediately changed her course in that direction; that the vessels were then quite near to each other; that, as soon as the libelant saw this movement of the Mott, he blew three short blasts, and rang the bell for the engineer to go full speed astern; that by this time the person in charge of the Mott saw his error, ported his wheel; and endeavored to go to the eastward again; that this movement was unsuccessful, for, although the Mott herself escaped striking the Laura B. or her tow by steering suddenly to the starboard, the schooner Smith, coming on at full speed, struck the barge Lena on the starboard side, near the bow, tearing her loose from the Laura B., breaking in her side, and sinking her.

The testimony is conflicting, but the weight of the evidence contradicts the allegations of the libel. There may have been, and doubtless was, some confusion of signals, arising from the fact that the Mott had signaled to each of the ferryboats before signaling to the Laura B., but it does not appear that the Laura B. was misled by them, because, after porting her wheel in response to the one whistle from the Mott, she made no further change in her course. According to the libelant's statement the tugs were not more than half a mile apart when the Mott signaled that she was going to the eastward. The vessels were then approaching each other at the rate of 15 miles an hour, and it is difficult to conceive what motive the master of the Mott could have had in attempting to make the erratic movements described in the libel, to say nothing of the improbability of such movements having been actually made within the time and the distance that intervened between the signal and the moment of the collision. The impracticability of a tug with a loaded schooner in tow, at the end of a hawser 60 fathoms in length, making the zigzag movements attributed to the Mott in such a short period of time renders this charge more difficult of belief. Even if the Mott could have turned her own bow so quickly and often, it does not follow that she could have pulled her tow about with equal facility. The Mott was on that side of the channel where she had the right to be, and the effort made on behalf of the Laura B. to show that the latter was on the western side of the channel is an admission that it was her duty to have kept her course on that side, whereas the fact that the Lena sank on the east side of the mid-channel demonstrates that, if the Laura B. had ported her helm sufficiently and promptly, she would have gone further to the westward, and have avoided the collision. Witnesses on board of the Mott, and others who were on the Peerless or on the Law, testified that the Mott continued her course as far to the eastward as was practically safe, under the circumstances, and that she did not make the tortuous movements charged by the libelant. The libelant admits that, if the Mott had kept her original course, there would have been no collision; and the failure to prove that she deviated from it leaves the cause of the collision unexplained, except on the theory that the Laura B. had gone too far to the eastward before porting her helm, or that she did not port it sufficiently. The Mott could not have gone further to the eastward without crowding against the anchored steamers, nor could she have gone around them without endangering her tow. There was ample room for the Laura B. to have gone to the westward, and there was no necessity for or obligation on the part of the Mott to go in that direction. The case against the schooner was not insisted on, as she followed in the wake of her tug. The decree of the district court, dismissing the libel, is therefore affirmed.